IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MATTHEW KUMMER,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | MEMORANDUM DECISION<br><br>Case No. 2:15-cv-00318- DBP<br><br>Magistrate Judge Dustin B. Pead |

　　　　The parties consented to this court's jurisdiction under 28 U.S.C. 636(c). (ECF No. 11.) Currently pending before the court is Plaintiff Matthew Kummer's ("Plaintiff") appeal of the Commissioner of Social Security's ("Commissioner") decision denying Plaintiff's claims for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–33, 1381–1383f. The parties did not request oral argument. Having considered the parties' briefs, the administrative record, and the relevant law, this court **AFFIRMS** the Commissioner's decision.

### I.　　　　PROCEDURAL HISTORY

　　　　Plaintiff protectively filed an application for Social Security Disability Benefits in May 2013, alleging an onset date of October 31, 2005. (Tr. 15.) The application was denied initially on September 5, 2013, and upon reconsideration on October 21, 2013. (*Id.*) Plaintiff filed a written request for hearing on November 7, 2013. An Administrative Law Judge presided over a hearing on September 23, 2014. (*Id.*) The ALJ denied benefits by decision on November 26,

2014. (Tr. 28.) Plaintiff appealed this denial. (Tr. 11.) The Social Security's Appeals Council denied review on May 21, 2015. (Tr. 1). Plaintiff then filed the present suit.

Plaintiff previously filed for disability benefits on September 2, 2008. His request was denied on January 6, 2009. (*Id.*) That determination became binding because Plaintiff did not appeal it. The ALJ in this case found no basis for reopening the prior application and therefore considered only Plaintiff's claims from January 7, 2009 forward. (*Id.*) The ALJ found that claimant met the insured status requirement of the Social Security Act through December 31, 2012. (Tr. 18.)

## II.     FACTUAL BACKGROUND

Plaintiff was born in 1973. (Tr. 65). Plaintiff has an eleventh-grade education and past work experience as a truck driver and carpenter. (Tr. 61, 243.) Plaintiff claims he became disabled in October 2005, due to physical and mental impairments that include back and other pain, depression, anxiety, diabetes, numbness, rage, and post-traumatic stress disorder ("PTSD"). (Tr. 65.) Plaintiff testified during the September 2014 hearing that his mental health was the main reason he could not work, but he was not in therapy at the time. (Tr. 49, 59.) Plaintiff also testified that his back problems prevented him from working. (Tr. 46, 54.)

Plaintiff's medical records show that he received treatment for back pain, mostly in 2013 (the year Plaintiff filed his application for benefits). (*E.g.* Tr. 437–78, 618–21.) Plaintiff was referred several times to physical therapy, but only intermittently attended appointments. (*See* Tr. 506–07, 670, 676–78, 688–93.) Likewise, Plaintiff's medical records support the ALJ's determination that Plaintiff suffered from depression, anxiety and PTSD. (Tr. 406–33, 596–616.) Plaintiff's mental health records evidence only intermittent treatment, mostly in 2013.

The record contains several medical opinions regarding Plaintiff's physical condition. Consulting physician James McDonald, M.D., performed an independent physical examination of Plaintiff in July 2013. (Tr. 539–43.) Dr. McDonald expected Plaintiff "would likely respond well to physical therapy" and noted that Plaintiff "was able to perform all exam maneuvers without difficulty." (Tr. 543.) Plaintiff told Dr. McDonald that medication helped with pain. (Tr. 539.) In September and October 2013, two state agency physicians reviewed Plaintiff's records. Both physicians opined that he could sit, stand, or walk about six hours per eight-hour workday, and frequently lift or carry ten pounds, and occasionally lift twenty pounds. (Tr. 72, 74–76, 108, 110–12.). In August 2014, Dr. Penrod completed an assessment indicating that Plaintiff had extreme limitations and could not stand or walk for more than ten minutes at a time and could not sit for more than one hour in an eight-hour day. (Tr. at 623–24.) Dr. Penrod concluded that Plaintiff was incapable of full-time work, due to "mostly depression issues." (Tr. 624.)

The record also contains a number of opinions regarding Plaintiff's mental condition. In January 2013 Dr. Liz McGill, Ph.D., evaluated Plaintiff for his state Medicaid claim. Dr. McGill diagnosed Plaintiff with major depression and dysthymic disorder. (Tr. 270.) She concluded that these ailments prevented Plaintiff from working in any occupation. (Tr. 274.) On the other hand, state agency psychologist Charles Raps, Ph.D., reviewed the record in July 2013 and concluded that Plaintiff did not meet the criteria for the listed impairments of affective disorder or anxiety-related disorder. (*See* Tr. 73–74, 96.) He determined that Plaintiff had only moderate restrictions in his daily activities, social functioning, and concertation, persistence or pace. (Tr. 73.) Dr. Raps concluded that Plaintiff could perform low stress, simple work with limited social interaction. (Tr. 78.) In October 2013 Helen Kjolby, Ph.D., reviewed the record and agreed with Dr. Raps that Plaintiff did not meet any listing, had only moderate functional restrictions, and could

3

perform simple, low-stress work. (Tr. 109, 114.) In October 2014 Kathy Barnett, Ph.D., performed a consultative psychological examination and opined that Plaintiff had mild limitations in his ability to interact with supervisors and make complex judgments, but could understand, remember, and carry out simple instructions, respond to usual work situations, and interact with the public and coworkers. (Tr. 707–17.) Dr. Barnett also noted that Plaintiff was "a somewhat inconsistent historian" and "may have significantly over-reported symptoms of neurologic and affect difficulties . . . ." (Tr. 707.)

### III.   STATEMENT OF RELEVANT LAW

#### a.   Definition of Disability Under the Act

The Act states that an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least twelve consecutive months. *Id.*; *Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002).

#### b.   Process for Determining Disability Under the Act

To determine whether a claimant is disabled, Social Security regulations set forth a five-step sequential evaluation process. The adjudicator considers whether a claimant: (1) engaged in substantial gainful activity during the alleged disability period, (2) had a severe impairment, (3) had a condition that met or medically equaled the severity of a listed impairment, (4) could return to his past relevant work, and if not (5) could perform other work in the national economy.  20 C.F.R. § 404.1520(a)(4). If a decision regarding the claimant's

disability can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. *Id*.

### c. Standard of Review

A district court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings, and whether the correct legal standards were applied. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Where the evidence as a whole can support the agency's decision or an award of benefits, the court must affirm the agency's decision. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

## IV.   THE ALJ'S DECISION

At step one, the ALJ found Plaintiff had not been engaged in substantial gainful activity since January 7, 2009. (Tr. 18.) At step two, the ALJ found that Plaintiff suffered from six severe impairments: dysthymic disorder, major depressive disorder, anxiety disorder not otherwise specified, PTSD, degenerative disc disease of the lumbar spine, and personality disorder. (*Id.*) At step three, the ALJ found that claimant did not meet any listed impairment. (Tr. 19–21.) At step four, the ALJ found claimant was unable to perform his past relevant work as a truck driver or carpenter. (Tr. 27.) At step five, the ALJ found that Plaintiff could make an adjustment to perform jobs that exist in significant numbers in the national economy. (*Id.* at 27–28.)

## V.   DISCUSSION

Plaintiff argues the ALJ made four errors. First, Plaintiff argues the ALJ erred by not finding that he suffered from the severe impairment of Carpal Tunnel Syndrome. Second,

Plaintiff urges that the ALJ erred by concluding that Plaintiff did not meet the criteria for two listed mental impairments. Third, Plaintiff claims that the ALJ afforded improper weight to the opinions of Dr. Penrod and Dr. McGill. Fourth, Plaintiff argues generally that he is disabled. This final contention can most generously be interpreted as asserting that the ALJ erred at step five because the ALJ concluded Plaintiff can perform a job that requires frequent contact with coworkers. The court will examine these arguments below.

### a. The ALJ did not err at step two

Plaintiff argues the ALJ erred "by not considering the evidence of [Plaintiff]'s Carpal Tunnel Syndrome ("CTS") and its effects on [his] ability to maintain gainful employment." (ECF No. 13 at 7.) Plaintiff then asserts Dr. Cunnif diagnosed him with CTS. (*Id.* (citing Tr. 672).) The court finds no error. First, as the Commissioner points out, the ALJ specifically considered and rejected Plaintiff's CTS claim. (Tr. 19.) Thus, the ALJ did consider evidence of Plaintiff's CTS, but found that Plaintiff's CTS claim was not supported by medical evidence and was thus not medically determinable.

Second, this finding is supported by the record. A claimant's "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508 "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." The lone medical record Plaintiff cites to support his claim that CTS was a severe disability, indicates merely that the examining physician believed more testing was necessary to confirm whether Plaintiff actually suffered CTS. (Tr. 669–73.) Plaintiff does not identify any records that confirm the diagnosis or offer other evidence he suffered from CTS. Plaintiff did not testify about CTS

6


during the hearing. Additionally, Plaintiff does not produce any evidence of the *effect* of the purported CTS on his ability to work or perform daily activities. Thus, Plaintiff has not established that his alleged CTS was a medically determinable, severe impairment.

### b. The ALJ did not err at step three

Plaintiff argues that the ALJ should have found that Plaintiff met the listed impairments of anxiety and depression. (ECF No. 13 at 4–6.) Yet, Plaintiff does not address the evidence supporting the ALJ's decision, or describe some way in which the ALJ made a legal error in his analysis of the evidence. Instead, Plaintiff recites the evidence he believes is favorable to him. In this way, Plaintiff invites the court to reweigh the evidence before the ALJ. This court cannot reweigh this evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (stating that reviewing courts cannot "reweigh the evidence or substitute [its] judgment for the Commissioner's."). The favorable evidence Plaintiff cites is not so overwhelming that the ALJ's decision was unreasonable.[1] Understandably, Plaintiff would have liked the ALJ to interpret the evidence differently. But the court is not in a position to reweigh that evidence.

In reply, Plaintiff argues that the Commissioner is unduly formalistic in her legal analysis of this case and asserts that "this case is not about weighing evidence." (ECF No. 21.) The court is concerned that Plaintiff misunderstands the standard of review and the court's role in a Social Security appeal. As stated earlier, the court's role on appeal is to determine "whether substantial evidence in the record as a whole supports the factual findings, and whether the correct legal standards were applied." *Infra* Part III.c. (citing *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014)). Accordingly, Tenth Circuit precedent requires the parties and the court to focus on

---

[1] The Commissioner cites ample evidence that supports the ALJ's finding that Plaintiff did not meet the criteria of a listed impairment. (*See* ECF No. 20 at 13–16.)

correct application of legal standards and existence of substantial evidence supporting the ALJ's decision. To the extent Plaintiff seeks to reverse this precedent, this court is unable to oblige.

### c. The ALJ properly considered Dr. Penrod's and Dr. McGill's opinions

Plaintiff argues that the ALJ incorrectly afforded Drs. Penrod and McGill's opinions less than controlling weight. (ECF No. 13 at 8.) Plaintiff argues that these doctors' opinions were entitled to such weight because the doctors were treating physicians and their opinions were consistent with the record evidence. (ECF No. 13 at 8.)

First, as the Commissioner points out, Drs. Penrod and McGill were not treating physicians as defined by in the Tenth Circuit. The ALJ does not need to treat a physician as a "treating source if [Plaintiff's] relationship with the source is based solely on [his] need to obtain a report in support of [his] claim for disability." *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). As to Dr. McGill, Plaintiff does not suggest he saw Dr. McGill aside from the one visit made for purposes of his Workforce Services claim. Thus, Dr. McGill's opinions are not entitled to controlling weight.[2]

Likewise, while Plaintiff saw Dr. Penrod twice, his opinion is likewise not entitled to controlling weight. A physician is a treating source "when he has seen the claimant a number of times and long enough to have obtained a longitudinal picture of the claimant's impairment, taking into consideration the treatment the source has provided and the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." *Doyal* at 763 (internal quotations and alterations omitted). The *Doyal* court found a physician was not a treating source where the physician saw the claimant two times over the span of several years.

---

[2] Also, Dr. Gill did not expect Plaintiff's conditions to last longer than eleven months. (Tr. 274.)

Here, Plaintiff saw Dr. Penrod two times over the span of six months. While this delay is much less than the delay in *Doyal*, Dr. Penrod still lacked the "longitudinal picture" that justifies the weight afforded to treating physicians. Plaintiff does not argue otherwise. Instead, he merely assumes without analysis that Dr. Penrod qualified as a treating physician. "A physician's opinion is . . . not entitled to controlling weight . . . merely because the claimant designates the physician as h[is] treating source." *Id.* at 763. Additionally, both visits occurred while this claim was pending and, during the second visit, Dr. Penrod completed paperwork related to this claim at Plaintiff's request. (Tr. 628, 648.) The sparse history presented is insufficient to qualify Dr. Penrod as a treating source.

### 1. *The ALJ gave good reasons for the weight afforded to Drs. McGill and Penrod*

Accordingly, the ALJ needed only to "give good reasons" for the weight afforded to these doctors opinions because they were not treating sources. *See* 331 F.3d at 762. The ALJ provided such reasons. One primary consideration in the ALJ's mind was that Plaintiff's treatment history suggested a "focus on secondary gain." (Tr. 24.) Plaintiff presented at several physicians for the purpose of obtaining forms for his disability application. (*See id.*) As already discussed, Drs. Penrod and McGill both fall into this category. Likewise, the ALJ noted that several professionals who saw Plaintiff suspected malingering. (*Id.*; Tr. 26.)

The ALJ also noted that Dr. McGill's and Dr. Penrod's opinions were internally inconsistent and inconsistent with the record, particularly the limited treatment Plaintiff sought for his physical or mental impairments. (Tr. 25–26.) While Plaintiff takes issue with these considerations, he does not offer any authority that suggests the ALJ erred. These considerations appear to be appropriate under Tenth Circuit law. *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (indicating that an ALJ should consider "the degree to which the physician's

opinion is supported by relevant evidence . . . consistency between the opinion and the record as a whole; and . . . other factors brought to the ALJ's attention which tend to support or contradict the opinion."). Thus, the ALJ properly considered Dr. McGill's and Dr. Penrod's opinions.

### d. The ALJ did not err at step five

Plaintiff's final argument sets forth SSR 85-15 and concludes that Plaintiff was so limited that the ALJ should have found Plaintiff disabled pursuant to that regulation. Plaintiff then briefly repeats his earlier arguments, which the court has already addressed. Finally, he asserts without justification that the ALJ should have found Plaintiff would be off task more than 30% of the time. Only one portion of this final argument merits discussion.[3] Plaintiff argues that the ALJ did not reconcile an asserted discrepancy between the RFC ascribed by the ALJ and the *Dictionary of Occupational Titles*' description for a bench assembler. Specifically, the ALJ found that Plaintiff was limited to only occasional interaction with coworkers and supervisors. (Tr. 21) Plaintiff asserts this limitation is incompatible with the definition of a bench assembler, who frequently works as a "member of [an] assembly group assembling one or two specific parts and passing [the] unit to another worker." *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles* No. 706.684-022 (4th ed. 1991), 1991 WL 679050. While the argument has superficial appeal, it does not justify remand.

The portion of the DOT just quoted tends to support Plaintiff's argument. Nonetheless, the specific job requirements listed in the DOT do not. The DOT indicates that taking instructions or helping others is not a significant component of the occupation. *See id.* Indeed, this is consistent even with the earlier-quoted description. Plaintiff is required only to pass

---

[3] As to Plaintiff's remaining arguments in this section, the court agrees with the Commissioner's arguments; Plaintiff largely repeats earlier arguments or assumes Plaintiff suffers greater limitations than what the ALJ found. (*See* ECF No. 20 at 19–21.)

assembled units to another worker; Plaintiff is not actually required to interact with those other workers, even if he must be in their proximity. Thus, there is no discrepancy between the ALJ's RFC finding and the occupation of bench assembler because Plaintiff need not interact with coworkers, even if he must work in their proximity.

Alternatively, even assuming Plaintiff cannot perform this one job, there is no basis for remand because the VE provided two other jobs that exist in significant numbers in the national economy. The Tenth "Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number . . . .'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). Yet, the Tenth Circuit has found several hundred jobs in the region sufficient. *See id.* (finding 650 to 900 regional jobs sufficient to constitute a significant number); *see also Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (finding 500 regional jobs sufficient) (cited with approval in *Trimiar*). The Tenth Circuit has also found fewer than 70,000 jobs in the national economy constituted a significant number. *Botello v. Astrue*, 376 F. App'x 847, 851 (10th Cir. 2010) (declining to remand where Plaintiff did not challenge ALJ's finding that 67,250 jobs in the national economy constituted a significant number).

Here, the VE testified that Plaintiff could also perform the jobs of inspector hand packager and electronics worker. The VE testified there were 30,000 inspector hand packager positions nationwide and 400 in the region. The VE also testified there were 42,000 electronics worker positions nationwide and 400 in the region. Plaintiff does not argue that these numbers are not sufficient to constitute a significant number of available jobs. Accordingly, the court finds no reversible error.

## VI. ORDER

Based on the forgoing, the court **AFFIRMS** the Commissioner's decision.

The Clerk is instructed to close this case.

Dated this 7th day of September 2016.

_____
Dustin B. Pead
United States Magistrate Judge